IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| BASILLO GARCIA | § | |
| TDCJ-CID #598955 | § | |
| v. | § | C.A. NO. C-10-311 |
| | § | |
| JAMES HACKMAN, ET AL. | § | |

## OPINION DENYING MOTION TO COMPEL

This is a civil rights action filed by a state prisoner pursuant to 42 U.S.C. § 1983.

Pending is Plaintiff's motion for an order compelling the production of certain documents.  (D.E.

19).  Defendants have filed a response objecting to Plaintiff's motion.  (D.E. 22).

## I.  BACKGROUND

Plaintiff is an inmate in the custody of the Texas Department of Criminal Justice

("TDCJ")-Correctional Institutions Division, currently incarcerated at the McConnell Unit.  He

filed this action on September 23, 2010, alleging that Defendants retaliated against him for

exercising his First Amendment rights.  (D.E. 1).  A Spears[1] hearing was conducted on October

29, 2010.  The following account of Plaintiff's allegations is based on his original complaint,

(D.E. 1), his October 29, 2010 hearing, a later supplement and its attached records, (D.E. 11),

and his motion for a preliminary injunction.  (D.E. 17).

From 2003 to 2007, Plaintiff filed a series of grievances accusing Defendant Hackman of

favoritism and mismanagement in his supervision of the waiting list for inmates to gain

admission to the McConnell Unit craft shop and of improperly delaying his ability to use those

facilities, despite plentiful available working space.  (D.E. 11, at 42-57, 72-79).  Prison officials

replied that the delay was caused by space limitations, that it was a privilege not a right to use

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).

the shop, and that the proper protocols were being followed in the management of the list.  Id. at 70.

In 2006, Defendant Crites refused to grant Plaintiff permission for his fiancee Lucia Campos to visit him on the false basis that he had lied about their marital intentions.  Id. at 39, at 62-66.

In November 2009, after Plaintiff was finally accorded a position at the shop, he submitted an I-60 form requesting a drill press.  Id. at 26-27.  The next month, the form was returned with Defendants' approval, and Plaintiff completed the necessary remaining paperwork and returned it to Defendant Hackman on December 17, 2009.  Id. at 2, 28.

In March 2010, concerned because no money had been withdrawn from his account to pay for the equipment, Plaintiff approached Defendant Hackman for an update on the status of his order, and was told "no! not yet!"  Id. at 2.  In April 2010, Plaintiff was notified by the drill press company that Defendant Hackman had sent them the order without first referring it to TDCJ's administrative offices in Huntsville, Texas, which had to approve of the order and authorize the payment from Plaintiff's inmate trust fund account.  Id. at 2, 17-18.  Defendant Hackman claimed that the order had been lost or misplaced, but in actuality committed the error deliberately because, according to Plaintiff, he simply "did not care about his order."  (D.E. 1, at 8; D.E. 11, at 2).  Defendant Hackman instructed him to file another formal request for the equipment.  (D.E. 1, at 9).  Because the error was costing him customers for his products, he submitted a grievance on April 13, 2010 against Defendants Hackman and Crites for failure to follow TDCJ policy, which stipulates that such orders should be processed within thirty days.  Id.; (D.E. 11, at 2).

2

The following day, a gang intelligence officer approached Plaintiff at the craft shop, ordered him to undress, and checked him for recent tattoos.  (D.E. 1, at 14; D.E. 11, at 3). Discovering a supposedly "undocumented" tattoo, he charged him with a disciplinary case, despite the fact that the tattoo was ten-years old and thus not in violation of TDCJ policy.  (D.E. 1, at 9).  Shortly thereafter, an "extortion sergeant" visited Plaintiff and remarked, regarding the charges, "that he should not have 'pissed the warden off.'"  Id.  The same day, Defendant Crites brought Plaintiff to his office, where he ordered him to lock up a number of gifts he had made for his fiancee at the shop–to which he ascribes an "intrinsic value" of nine hundred and fifty dollars–for an indefinite period of time.  Id. at 9, 11; (D.E. 11, at 3).  His space at the craft shop was then searched unsuccessfully for contraband, and he was banned from the area for thirty days.  (D.E. 1, at 10).

Upset by these actions, Plaintiff filed several more grievances alleging that his suspension had been unfairly extended, that his fiancee had been improperly prevented from picking up the gifts he made for her, and that his grievances were being tampered with, all in retaliation for his various complaints over the years of his confinement.  (D.E. 11, at 6-24).  In response to Plaintiff's grievances, he was told that he was being punished for smuggling a leather item out of the wood shop, id. at 22, in violation of a policy that he claims does not exist and makes no sense.  (D.E. 17, at 2-3).  As a result, his suspension was extended to ninety days. (D.E. 1, at 10; D.E. 11, at 24).  All claims of retaliation were denied, and the confusion over the initial requests were deemed the product of human error.  (D.E. 11, at 6-24).  Even though the ninety-day period (which Plaintiff contends was unfairly imposed) had lapsed months earlier, Plaintiff remained suspended as of November 8, 2010, turning a ninety-day suspension into more

than a year-long one.  Id. at 1.

To support his claim regarding the allegedly unfair extension of his suspension, Plaintiff submits two letters from TDCJ's Office of the Ombudsman, indicating that McConnell Unit personnel had assured that office that the suspension was supposed to last until October 15, 2010 at the latest.  Id. at 29-30.  He has also filed a series of receipts showing that he had previously obtained permission from TDCJ for his fiancee to pick up goods he produced at the shop.  Id. at 32-40.

Plaintiff asserts that Defendants' actions violated his rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution, as well as his state law right to be free from the unlawful conversion of his property.  (D.E. 1, at 11-12).  In Plaintiff's original complaint, he sought an injunction ordering Defendants to refrain from further retaliation and to allow him to return to his work at the craft shop.  Id. at 11.  He further sought compensatory and punitive damages for his losses and injuries, which include ulcers induced by the stress of his ordeal.  (D.E. 1, at 12; D.E. 11, at 1).

## II.  DISCUSSION

### A.    Legal Standard.

Plaintiff seeks an order compelling the production of various documents by Defendants, (D.E. 19), who have asserted qualified immunity.  (D.E. 20, at 4-10).  Qualified immunity provides officials "not just immunity from liability, but immunity from suit," including discovery.  Vander Zee v. Reno, 73 F.3d 1365, 1368 (5th Cir. 1996) (citation omitted).  Indeed, the Fifth Circuit has concluded that "[e]ven limited discovery on the issue of qualified immunity 'must not proceed until the district court *first* finds that the plaintiff's pleadings assert facts

4

which, if true, would overcome the defense of qualified immunity.'"  Id. at 1368-69 (citing

Wicks v. Mississippi State Employment Servs., 41 F.3d 991, 994 & n.10 (5th Cir. 1995)

(emphasis in original)).

The Fifth Circuit has explained that the Supreme Court's jurisprudence on the qualified

immunity defense establishes "that qualified immunity does not shield government officials from

all discovery, but only from discovery which is either avoidable or overly broad."  Lion Boulos

v. Wilson, 834 F.2d 504, 507 (5th Cir. 1987) (emphasis added).  The court further elaborated on

when discovery may be permitted despite the assertion of qualified immunity:

> Discovery orders entered when the defendant's immunity claim
> turns at least partially on a factual question; when the district court
> is unable to rule on the immunity defense without further
> clarification of the facts; and which are narrowly tailored to
> uncover only those facts needed to rule on the immunity claim are
> neither avoidable nor overly broad.

Id. at 507-08.

## B.    Plaintiff's Motion Is Denied.

Plaintiff claims that defendants failed to respond to Request Number 2 seeking "any and

all directives, policies or instructions to Defendants Hackman, Crites, or [other TDCJ]

employees concerning the process or procedures that prisoners must take when requesting to buy

craft shop materials or tools from the free world companies."  (D.E. 19, at 1).[2]  Defendants

objected to the request on the grounds that it was "overly broad and not reasonably calculated to

lead to admissible evidence on the claims."  Id. at 5.  They further objected that Plaintiff's

request was "not limited to any time frame and appears to seek all policies, directives or

---

[2] Defendants point out that this request was actually Number 3.

5

instructions from the inception of the Texas prison system."  Id.  Finally, Defendants noted that all TDCJ policies can be accessed by Plaintiff through the unit law library and inmate handbook. Id.

Plaintiff replies that the request is not overbroad, that the time-frame is not excessive because craft shop has not been an institution at TDCJ since its inception, that the unit law library does not contain the policies he seeks, and that the documents are relevant because they represent the stated justification for the allegedly retaliatory acts.  Id. at 2.  In Defendants response to the motion to compel, they contend that the request is moot because the policies in question have now been provided.  (D.E. 22, at 3).  Specifically, they acknowledge that they have produced Offender Piddling and Craft Sales (A.D. 14.59).  Id.  Although Plaintiff's request was reasonable, because it has been produced, his request is denied as moot.

Next, plaintiff asserts that defendants failed to respond to Request Number 5 seeking "any documentation in possession of the T.D.C.J.-ID concerning any investigation conducted by any security threat group staff member of the plaintiff if the plaintiff has been under investigation by the (STG)...."  (D.E. 19, at 2).  Defendants objected to the request as overly broad in scope and overly broad in time because it was "not limited to the time frame at issue in this lawsuit."  (D.E. 22, at 3).  They added that the request was "not reasonably calculated to lead to admissible evidence on Plaintiff's claims" because it "concerns all topics rather than the matter at issue in this lawsuit."  Id.  Finally, Defendants objected on the grounds that they had "previously disclosed in their initial disclosures documents about Plaintiff's undocumented tattoo, which was discovered by an STG officer."  Id.

Plaintiff replies that the request is not overly broad because it relates to him only.  (D.E.

19, at 3).  He further asserts that the request is relevant to his claim because the actions by the security threat group are part and parcel of the retaliatory behavior he alleges.  Id.  Finally, he contends that it should not be onerous to retrieve these documents because they are organized by each individual inmate.  Id.  In Defendants response to the motion to compel, they reiterate that the request is irrelevant, noting in addition that "no STG officer is a defendant in this case." (D.E. 22, at 3).

The central complaint that Plaintiff makes regarding the security threat group is that he was unfairly investigated and punished by that office for his grievances under the guise of sanctioning him for a tattoo.  (D.E. 1, at 9).  Defendants have supplied records detailing that investigation and its findings.  (D.E. 20, Ex. D, at 3-6).  They do not contest his statements that he was never previously investigated by the security threat group, and other security threat group records concerning him therefore presumably do not exist and are, in any event, irrelevant. Accordingly, plaintiff's motion to compel these documents is denied.

Lastly, plaintiff asserts that defendants failed to respond to Request Number 6 seeking "any documentation created by either the unit internal affairs, grievance administrative department or office of inspector general concerning complaints made against the defendants over the craft shop."  (D.E. 19, at 3).  Defendants objected that the request was "overly broad in time and scope, irrelevant, and vague."  (D.E. 22, Ex. A, at 6).  They further argued that it would be unduly burdensome to collect such complaints from over fifty prisons.  Id. at 6-7.  Plaintiff responded that the request was not overly broad because it restricted the documents to those produced by three offices, because he sought only the serious complaints, and because he sought only complaints relating to the two defendants in this action.  (D.E. 19, at 4).  In Defendants'

response to the motion to compel, they reiterate their original objections.  (D.E. 22, at 4).

Defendants' objections notwithstanding, the request is not overly broad in time and scope, nor is it vague.  Indeed, their initial response suggests that they did not fully read the request, as it concerned only the two defendants and the McConnell Unit craft shop and thus would not have necessitated the expansive research they describe.  However they misread the request, though, they are correct that it is irrelevant.  The question of whether an official is entitled to qualified immunity turns first on whether he "committed a constitutional violation under current law," and second on whether his "actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of."  Atteberry v. Nocona Gen. Hosp., 430 F.3d 245, 253 (5th Cir. 2005) (citations omitted).  Neither question is illuminated by the complaints of other prisoners regarding Defendants and their management of the craft shop.  See Romero v. Lann, No. 5:06cv82, 2007 WL 2010748, at *2 (E.D. Tex. July 6, 2007) (unpublished) ("Grievances filed by other inmates against [the defendant] are not relevant" to disposition of prisoner civil rights action) (citing Fed. R. Civ. P. 404), aff'd, 305 F. App'x 242 (5th Cir. 2008) (per curiam) (unpublished).  Accordingly, plaintiff's motion to compel these documents is denied.

### III.  CONCLUSION

Accordingly, Plaintiff's motion for an order compelling production of documents, (D.E. 19), is DENIED.

ORDERED this 28th day of April 2011.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE